UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 08-86-02-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD SMITH, | ) | **AMENDED MEMORANDUM** |
| | ) | **OPINION & ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Richard Smith was indicted for conspiracy to distribute, and possession with intent to distribute, methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. [R. 1.] On January 8, 2009, he pled guilty to the charge brought pursuant to section 846. [R. 61.] This resulted in Smith being subject to the mandatory detention provision of section 3143(a)(2). This requires that defendants who plead or are found guilty of certain crimes be mandatorily detained while awaiting imposition of sentence. This is the case unless the defendant is unlikely to flee or pose a danger and one of two other factors are present–either there is a substantial likelihood that an acquittal or new trial will be granted; or the United States recommends that no sentence of imprisonment be imposed. Here, these exceptions do not apply. Smith, therefore, was subject to mandatory detention. Despite this mandate, Smith moved for continued release pending sentencing for "exceptional reasons" under 18 U.S.C. § 3145(c). For the reasons set forth below, Smith will be detained pursuant to 18 U.S.C. § 3143(a)(2).

I.

The statute at issue here, 18 U.S.C. § 3145(c), governs "appeal from a release or detention order" and allows a defendant to be released in certain circumstances for "exceptional reasons." The question presented, simply put, is this: does this statute grant district judges the authority to engage in the "exceptional reasons" analysis? While the question is simply stated, it has been met with conflicting answers.

Six circuits hold in published opinions that district courts have authority under section 3145(c) to consider whether "exceptional reasons" exist for granting release. However, a number of district courts in other circuits have interpreted the statute as a grant of jurisdiction to hear an appeal from a release or detention order only to courts of appellate jurisdiction. Although the Sixth Circuit has not decided the issue, it has followed its sister circuits in an unpublished decision, and determined that district judges are "not precluded from making a determination of exceptional circumstances in support of release." *United States v. Cook*, 42 Fed.Appx. 803, 804 (6th Cir. 2002). Because the Sixth Circuit's holding in *Cook* is non-binding,[1] the district courts within this circuit remain divided.[2]

---

[1] In the Sixth Circuit, it has long been the rule that unpublished cases are not binding precedent. *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002), *citing to Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 833 (6th Cir. 2000); *Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 431 n.14 (6th Cir. 1992).

[2] *See United States v. Miller*, 568 F. Supp. 2d 764, 769 (E.D. Ky. 2008)(finding the statute ambiguous and holding a district judge has jurisdiction under § 3145(c) to consider "exceptional reasons"); *In re Sealed Case*, 242 F. Supp. 2d 489 (E.D. Mich. 2003) (holding district court lacks jurisdiction under § 3145(c) and urging Sixth Circuit to hold in published opinion that § 3145(c) grants authority only to court of appeals); *United States v. Burnett*, 76 F. Supp. 2d 846, 848-49 (E.D. Tn. 1999)(noting that the majority view "may not be based upon the most solid of ground," but nevertheless following the weight of authority on the issue of whether a district court has

*A.*

The circuits finding in the law authority for a district court to consider "exceptional reasons" under section 3145(c) take a pragmatic approach. In *United States v. Carr*, the Fifth Circuit relies on no canons of statutory construction in its brief analysis of section 3145(c) and holds that a district court has authority under the statute to grant presentence release for "exceptional reasons." 947 F.2d 1239, 1240 (5th Cir. 1991). The *Carr* court holds that Congress intends for section 3143(a)(2) to be read in conjunction with section 3145(c) because the "exceptional reasons" language of section 3145(c) was added to the statute at the same time as the mandatory detention provisions of sections 3143(a)(2) and (b)(2), and states that it can "see no reason why Congress would have limited this means of relief to reviewing courts." *Id*. It further reasons that because section 3143 uses the term "judicial officer" to refer to the person that may direct release and initially order detention, the term "judicial officer" in section 3145(c) applies to both lower courts and courts of appeal. *Id.* The Seventh Circuit's analysis in *United States v. Herrera-Soto* is similarly cursory in its holding that section 3145(c) applies to district courts. 961 F.2d 645, 647 (7th Cir. 1992).

Published opinions from the Second, Tenth, Eighth and Ninth Circuits contain no independent statutory analysis, and hold, based on *stare decisis*, that section 3145(c) authorizes district courts to consider exceptional reasons. *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) (following *Carr*); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992) (following *Carr*, *Herrera-Soto*, *DiSomma* ); *United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir.

---

jurisdiction under § 3145(c)).

1993) (following *Carr*); *United States v. Garcia*, 340 F.3d 1013, 1014 n. 1 (9th Cir. 2003). District courts within these circuits follow precedent, but not without comment on the inadequacy of the majority view's reasoning. For example, a district court in Vermont followed the Second Circuit's decision in *DiSomma*, but nonetheless commented that "[t]his circle of decisions, however well-intentioned, reflects a certain circularity of reasoning . . . ." *United States v. Bloomer*, 791 F.Supp. 100, 102 n.1 (D. Vt. 1992).

Recently, more substantive articulations of this statutory construction have emerged. *United States v. Prince*, No. 5:06CR41-11-V, 2008 WL 215811 (W.D.N.C. Jan. 24, 2008); *United States v. Miller*, 568 F. Supp. 2d 764 (E.D. Ky. 2008). The district courts in both *Prince* and *Miller* examine the statutory language of section 3145(c) and determine that its language is ambiguous. *Prince,* 2008 WL 215811 at *4-*5; *Miller,* 568 F. Supp. 2d at 772. Specifically, they find that the term "judicial officer" in section 3145 is "reasonably susceptible to more than one meaning" because the term is used throughout the Bail Reform Act to refer to "judges at all levels of the federal judicial system, ranging from magistrate judges to appellate judges depending upon the posture of the case." *Prince* 2008 WL 215811 at *6, *citing to United States v. El-Edwy*, 272 F.3d 149, 152 (2d Cir. 2001); *Miller*, 568 F. Supp. 2d at 772.

Because the *Prince* and *Miller* courts find the language of section 3145(c) ambiguous, they examine its legislative history and conclude that Congress did not intend for section 3145(c) to be limited to appellate courts. *Prince*, 2008 WL 215811 at *6; *Miller*, 568 F. Supp. 2d at 772. In particular, the *Prince* and *Miller* courts determine that Congress intends for the "exceptional reasons" analysis to apply to district courts because the mandatory detention provision of section 3143(a)(2) was added to the Bail Reform Act at the same time the "exceptional reasons" clause

4

was added to section 3145(c). *Id*. Further, the courts reason that Congress did not intend to limit the "exceptional reasons" analysis to appellate courts because a letter from the Department of Justice sent to the Senator who introduced the legislation did not expressly mention limiting a district court's ability to consider "exceptional reasons." *Prince,* 2008 WL 215811 at *7, *citing to United States v. DiSomma*, 951 F.2d 494, 498 (2d Cir. 1991); *Miller*, 568 F. Supp. 2d at 773.

In addition to the legislative history, the *Prince* court argues that Federal Rule of Appellate Procedure 9, which deals with release before and after a judgment of conviction, supports the conclusion that section 3145(c) applies to district courts. *Prince*, 2008 WL 215811 at *8. The court concludes that because Rule 9(a) implies that a district court and appellate court may hear a motion for release before a judgment of conviction, and because sentencing takes place before a judgment of conviction is entered, then district courts necessarily have jurisdiction to hear motions under section 3145(c) before sentencing. *Id.* The court further concludes that Rule 9(b)'s use of the word "review" within the rules of appellate procedure signifies that "appeal" and "review" are synonymous, and therefore, the distinction between the titles of parts (a), (b), and (c) of section 3145 do not limit part (c) to appellate jurisdiction. *Id.*

Finally, both the *Prince* and *Miller* courts note that district courts may authorize bail pending appeal under section 3143(c) and hold that district courts are "better equipped to find facts necessary to making a bail determination," and therefore, district courts may conduct the "exceptional reasons" analysis under section 3145(c). *Prince,* 2008 WL 215811 at *8; *Miller*, 568 F. Supp. 2d at 773.

*B.*

In those circuits that have not yet definitively construed section 3145(c), a diverse group of district courts have reached the opposite conclusion. This view was first set out by Judge Diamond of the Western District of Pennsylvania in *United States v. Salome*, 870 F.Supp. 648, 651-53 (W.D. P.a. 1994). There, the court holds that the plain language of the statute, the statute's overall structure, and the procedures of Fed. R. App. P. 9(b) make clear that the authority to release a defendant for "exceptional reasons" under 18 U.S.C. § 3145(c) is only given to appellate courts. *Id*. The court emphasizes that the statute's title: "[a]ppeal from a release or detention order," and its first sentence: "[a]n appeal from a release or detention order . . . is governed by . . . section 1291 of title 28 [authorizing appeal only from final decisions of the district court] and section 3731 [authorizing appeal of criminal cases by the United States with the court of appeals] of this title," make logical sense only in the context of appellate jurisdiction. *Id.* at 652.

The *Salome* court further reasons that the overall structure of section 3145 demonstrates that part (c) applies only to appellate courts as parts (a) and (b) of the statute provide review from a magistrate judge or "a person other than a judge of a court having original jurisdiction over the offense and *other than a Federal appellate court*." 18 U.S.C. §§ 3145(a) and (b). Further, the court concludes that had Congress intended for district courts to decide whether "exceptional reasons" exist for release from mandatory detention, it would have included section 3145(c) within section 3143. *Id*., *see also United States v. Harrison*, 430 F. Supp. 2d 1378, 1383 (M.D. Ga. 2006).

Finally, the *Salome* court dispels the notion that appellate courts are not suited to

determine facts in deciding whether "exceptional reasons" exist. As the court explains, Fed. R. App. P. 9(b) empowers the court of appeals to independently consider evidence that was not before the trial court; and therefore, courts of appeal "have the ability, indeed the responsibility, to make independent findings in proceedings arising under the Bail Reform Act." *Id*. at 653.

The reasoning of *Salome* is reinforced by *Nesser*, which holds that the term "judicial officer" in section 3145(c) applies only to federal appellate courts since the references to judicial officers in both parts (a) and (b) of 3145 are expressly qualified as officers "other than a Federal appellate court." *United States v. Nesser*, 937 F.Supp. 507, 509 (W.D. Pa. 1996). Had Congress intended for section 3145(c) to apply to district courts, it would have included the same qualifying language of sections 3145(a) and (b) in section 3145(c). *Id.*

This is the same conclusion reached in the Southern District of New York. *United States v. Chen*, 257 F. Supp. 2d 656, 665 (S.D.N.Y. 2003).[3] The *Chen* court points out that its reading of section 3145(c) is supported by the procedures set forth in Federal Rule of Criminal Procedure 46(c) and Federal Rule of Appellate Procedure 9(c). *Id*. at 662. Because Rule 46(c) dictates that a district court may only look to section 3143 in considering release, and Rule 9(c) dictates that a court of appeal may look to both sections 3143 and 3145(c) in considering release, Congress intended that section 3145(c) apply only to courts of appeal. *Id*.

Within the Sixth Circuit, Judge Gadola of the Eastern District of Michigan follows a similar approach, holding that the district court lacks jurisdiction to determine whether

---

[3]Although the decision in *Chen* is subsequent to the Second Circuit's decision accepting a district court's authority to apply section 3145(c) in *United States v. DiSomma*, 951 F.2d 494 (2d Cir. 1991), the *Chen* court concludes that the opinion in *DiSomma* does not directly resolve the issue in the Second Circuit and therefore, declines to follow it.

exceptional reasons exist under section 3145(c). *In re Sealed Case*, 242 F. Supp. 2d at 494. He finds persuasive the statutory interpretation and holding of *Salome* and urges the Sixth Circuit to reassess its holding in *Cook* before publishing an opinion on the issue. *Id.* at 493-94, 495 n.7.

Significantly, Judge Gadola addresses directly the compelling policy arguments for a more expansive reading of section 3145(c). These include the claim that awaiting an appellate court's determination of a detention order jeopardizes the defendant's ability to cooperate, is burdensomely time consuming and encourages the United States to delay guilty pleas in situations where the defendant cooperates. *Id.* at 495. Although the court sympathizes with the policy arguments, it explains that "such policy concerns do not justify overriding the clear jurisdictional instructions of Congress."[4] *Id*. The court concludes that it "lacks the authority to amend the United States Code" and emphasizes Justice Scalia's caution that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id*. at 496, *citing to Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)(Scalia, J., for a unanimous Court).

III.

As is often the case for a district judge, this matter rests on the interpretation and application of the law enacted by the political branches. And as the above survey illustrates, the method and means used in that process have a great deal to say about the end reached: and, in many respects, about a judge's view of the role of the judiciary in a government premised on

---

[4] With regard to these policy concerns, the court offers several solutions, including an appellate judge's ability to order release pending the panel's disposition of the appeal under Fed. R. App. P. 9(a)(3), and the ability of the United States to ask the court to take a guilty plea under advisement, so as to secure the plea without triggering the mandatory detention provisions under section 3143. *Id.* at 496.

separate powers.

When engaging in statutory construction in the Sixth Circuit, "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 390 n.6 (6th Cir. 2007), *citing to Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 568 (2005). This requires a judge to first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) *citing to United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989); *Brilliance Audio, Inc. v. Haights Cross Comm., Inc*., 474 F.3d 365, 371 (6th Cir. 2007). Whether the language of a statute is plain and unambiguous depends upon not only the language itself, but also upon the "specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341, *citing to Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992); *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991), *see also United States v. Meyers*, 952 F.2d 914, 918 (6th Cir. 1992), *cert. denied,* 503 U.S. 994 (1992). Further, it has long been the rule that the Court's analysis goes no further and does not resort to legislative history "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002); *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001); *Harper v. Auto Alliance Intern., Inc*., 392 F.3d 195, 207 (6th Cir. 2004).

Even where a statute's language is found ambiguous, the Sixth Circuit "is mindful of the limited utility and reliability of legislative history" and has emphasized that "Congress's intent is better derived 'from the words of the statute itself than from a patchwork record of statements

9

inserted by individual legislators and proposals that may never have been adopted by a committee, much less an entire legislative body.'" *City of Cookeville,* 484 F.3d at 390 n.6; *Schmitt v. City of Detroit*, 395 F.3d 327, 330 (6th Cir. 2005); *Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784-85 (6th Cir. 2003). Hence, the Sixth Circuit has frequently declined to rely on legislative history because legislative records are often contradictory. *Norton*, 330 F.3d at 785. Or, at the very least, it has refused to give weight to passages of legislative history that are not linked to the text of the statute. *Id*., citing to *Shannon v. United States,* 512 U.S. 573, 583 (1994).

This view is informed by the teaching of a long line of Supreme Court precedent. Justice Jackson, for example, cautioned that "[r]esort to legislative history is only justified where the face of the Act is inescapably ambiguous, and then [ ] should not go beyond Committee reports, which presumably are well considered and carefully prepared." *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395 (1951)(concurrence). Justice Scalia takes this view a step further, concluding that "[t]he only mistake [is] failing to recognize how unreliable Committee Reports are-not only as a genuine indicator of congressional intent but as a safe predictor of judicial construction. We use them when it is convenient, and ignore them when it is not." *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 617 (1991).

With this in mind, the structure and context of the statute is the beginning and end of the inquiry here. Considered in context, the statutory text of section 3145(c) most naturally authorizes only appellate courts to determine whether "exceptional reasons" exist for granting release of a defendant mandatorily detained under sections 3143(a)(2) or (b)(2).

Section 3145(c) states:

**(c) *Appeal* from a release or detention order.**--An *appeal* from a release or detention

> order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of *section 1291 of title 28 and section 3731 of this title*. The *appeal* shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C.A. § 3145(c) (2009)(emphasis added). As a preliminary matter, Section 3145(c) is titled "*[a]ppeal* from a release or detention order," while sections 3145(a) and (b) directly preceding it are respectively titled "*[r]eview* of a release order," and "*[r]eview* of a detention order." 18 U.S.C. 3145(a)-(c)(emphasis added). Considering a statutory heading is one tool available to judges engaged in statutory construction. *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326, 2336 (2008), *Porter v. Nussle*, 534 U.S. 516, 528 (2002). As the *Chen* court emphasizes, the ordinary meaning of "appeal" is "to seek review (from a lower court's decision) *by a higher court*." *Chen*, 257 F. Supp. 2d at 660, *citing to* Black's Law Dictionary (7th ed. 1999). Some argue that the use of "appeal" in the title of section 3145(c) is not significant because Congress uses the words "review" and "appeal" interchangeably in the Federal Rules of Appellate Procedure.[5] *See Prince,* 2008 WL 215811 at *8. But Congress's imprecise use of "appeal" and

---

[5]The comments to the 1994 amendments to FED. R. APP. P. 9 suggest that Congress's use of "review" rather than "appeal" is done only in the context of appellate jurisdiction. The advisory committee notes state that the use of "review" in FED. R. APP. P. 9(b) instead of "appeal" was done

> because review may be obtained, in some instances, upon motion. Review may be obtained by motion if the party has already filed a notice of appeal from the judgment of conviction. If the party desiring review of the release decision has not filed such a notice of appeal, review may be obtained only by filing a notice of appeal from the order regarding release.

FED. R. APP. P. 9 advisory committee's note to 1994 amendments. Because "review" was used

"review" within a body of rules that unambiguously governs appellate practice is immaterial here as the Court must analyze the placement of the word "appeal" within the statute before it. *See Chen*, 257 F. Supp. 2d at 663. The most direct reading of "appeal" as used in the title of section 3145(c) is that it refers to review from a lower court to a higher court, which by definition cannot include review from the same court issuing the release or detention order. *Chen*, 257 F. Supp. 2d at 660. So, Congress's use of "appeal," rather than "review," most logically suggests that 3145(c) applies to appellate rather than district courts.

This is further supported by the first sentence of the statute which states that section 3145(c) is governed by section 1291 of title 28 and section 3731 of title 18. 18 U.S.C. 3145(c). Both 28 U.S.C. 1291 and 18 U.S.C. 3731 "relate solely to review of a final order of a district court by a court of appeals." *Chen*, 257 F. Supp. 2d at 661. As the *Nesser* court reasoned, Congress's placement of the two statutes, 28 U.S.C. 1291 and 18 U.S.C. 3731, would be rendered meaningless if section 3145(c) were contorted to apply to a district court because both of the statutes cited in the first sentence of section 3145(c) create jurisdiction for appellate courts, not district courts. *Nesser*, 937 F.Supp. at 509. To read the first sentence as empowering district courts to hear appeals under statutes creating appellate jurisdiction is a contrived reading, especially given that district judges would hear appeals from themselves. *Id.*

This is not to say that the term "judicial officer" in section 3145(c) is ambiguous, but rather, that its meaning is limited in this context to appellate courts. It does not necessarily follow that the use of the term "judicial officer" throughout the Bail Reform Act to refer to magistrate

---

instead of "appeal" for situations where a party has already filed notice of appeal, Congress's use of "review" instead of "appeal" still refers to review by an appellate court, and does not logically extend to review by a district court.

judges, district court judges and appellate judges renders the use of the term in section 3145(c) unclear. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997), *citing to Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992); *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991), *see also United States v. Meyers*, 952 F.2d 914, 918 (6th Cir. 1992), *cert. denied,* 503 U.S. 994 (1992). After all, the definition of "judicial officer" within the Bail Reform Act means "unless otherwise indicated, any person or court authorized . . . to detain or release a person before trial or sentencing or pending appeal . . . ." 18 U.S.C.A. § 3156(a)(1). Therefore, the definition provides that the term "judicial officer" can mean either a single judge ("any person") or a full "court" depending on the context in which it is used.

Consequently, the text of parts (a) and (b) of section 3145 support the conclusion that "judicial officer" in section 3145(c) refers to federal appellate judges. Both 3145(a) and (b) refer to judicial decision makers as those "other than a Federal appellate court." 18 U.S.C. §§ 3145(a) and (b). However, the "other than a Federal appellate court" language does not appear in section 3145(c). A well-established rule of statutory construction provides that when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) *quoting United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972).

Therefore, the omission of "other than a Federal appellate court" from section 3145(c) suggests that in this section of the law the term "judicial officer" refers to federal appellate, not district, judges. Read in the specific context of section 3145(c), a statute which addresses appellate review, the term "judicial officer" logically applies to appellate judges. *Chen*, 257 F.

Supp. 2d at 663. This conclusion is bolstered by Fed. R. App. P. 9(a)(3), which allows a single judge on a court of appeals panel to order release of a defendant pending the panel's ultimate decision, which demonstrates as well that the singular use of the term "judicial officer" within section 3145(c) logically applies to appellate judges.

Moreover, a review of the broader context of section 3145 supports the proposition that part (c) grants appellate jurisdiction only. Section 3145 is structured in three parts. The first two parts of 3145 grant parties the ability to have "the court having original jurisdiction of the offense" review release or detention orders made by either magistrate judges or "a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court." 18 U.S.C. §§ 3145(a), (b) (2009). Read in its natural progression, it makes sense that after the statute provides review by a district court of a magistrate judge's order in parts (a) and (b), part (c) would provide parties the right to seek "[a]ppeal from a release or detention order" given by a district court.

This conclusion is not challenged by arguing that section 3145(c) should be read as an extension of section 3143, which provides the procedures for a district court to determine whether a defendant should be detained pending sentencing or appeal. That sections 3143(a)(2) and (b)(2) and 3145(c) were amended at the same time may lead to the conclusion that the two sections should be read in conjunction, but does not necessarily lead to the conclusion that 3145(c) is an extension of the district court's authority in section 3143. Furthermore, the fact that 3145(c) was added contemporaneously with the amendments to 3143, but was not placed at the end of section 3143, bolsters the conclusion that Congress meant for the "exceptional reasons" analysis to be performed by an appellate court, not a district court completing its analysis under section 3143.

Frankly, a district judge has no way to know the "intent" of Congress absent reference to the express language. Judge Gadola, therefore, is correct:

> If the Congress had intended to invest district courts with the discretion to determine whether "exceptional reasons" existed, [ ] it would have said so in § 3143. The fact that Congress inserted the "exceptional reasons" language in § 3145(c) indicated that they intended this discretion to be limited to judges of the courts of appeals.

242 F. Supp. 2d at 492.

Nor is the conclusion undermined by arguing that appellate courts are not suited to find facts. As the *Salome* court correctly points out, Fed. R. App. P.(a)(2) provides for appellate courts to consider papers and affidavits in addition to the record that was before the trial court, which empowers the courts of appeal to make independent findings of fact that may be distinct from the facts found at the trial court. *Salome*, 870 F.Supp. at 653.

In the end, the most natural reading of the text, structure, and context of section 3145(c) leads to the conclusion that Congress grants authority to find "exceptional reasons" only to appellate courts. Accordingly, the Court does not have the authority to address Smith's "exceptional reasons" argument for release pending sentencing under 3145(c) as such an argument may properly be considered only by the court of appeals.

In reaching this holding, the Court is mindful that it limits discretion in a manner that sometimes leads to a harsh result. But a judge's wish that this not be the case, or that an act of Congress provide more flexibility, is simply not a sufficient ground to abandon reliance on the words of the statute itself. Embarking on a wishful search for meaning in the legislative history or other extrinsic sources, which are of limited value and reliability, risks improperly expanding the province of the courts. *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484

F.3d 380, 390 n.6 (6th Cir. 2007), *citing to Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Or in the words of the English proverb, "[i]f wishes were horses, beggars would ride...."

### IV.

Accordingly, it is hereby **ORDERED** that Smith's request to remain released is **DENIED**.

This the 12th day of January, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge